RESNECK, Appellant, vs. GRUENDLER SHOES, INC., Defendant: TWIN CITY FIXTURE EXCHANGE, INC., Respondent.

*January 13—February 9, 1943.*

For the appellant there was a brief by *Port & Dierker* of Watertown, and oral argument by *Kenneth E. Port.*

For the respondent there was a brief by *Skinner & Thauer* of Watertown, and oral argument by *Wallace Thauer.*

WICKHEM, J. According to the stipulated facts, plaintiff, on June 14, 1939, leased a store building to defendant,

Gruendler Shoes, Inc., for a term commencing August 1st of that year, and expiring July 31, 1941. The stipulated rental was $150 per month. The defendant, Gruendler Shoes, Inc., filed a petition in the United States district court for the Eastern district of Wisconsin under sec. 77B of the Federal Bankruptcy Act. In accordance with the provisions of this act Gruendler Shoes, Inc., by bill of sale transferred to Twin City Fixture Exchange, Inc., on February 24, 1940, "all of the stock, goods, wares, merchandise and fixtures located in the three stores of Gruendler Shoes, Inc., at Fond du Lac, Manitowoc, and Watertown, Wisconsin." The bill of sale did not in any way refer to the lease. During the month of February, 1940, a check for rent was issued to plaintiff by Leo Rickter, trustee in bankruptcy. Arthur Gruendler was president of Gruendler Shoes, Inc., and on or about February 21, 1940, was employed by the defendant, Twin City Fixture Exchange, Inc., as manager of all the stores theretofore operated by defendant, Gruendler Shoes, Inc. The agreement recites the fact of the bill of sale and the desire on the part of Twin City Fixture Exchange, Inc., to continue the operation of the stores "in the locations in which they are now located" and the desire to employ Arthur Gruendler as the manager of such stores. The agreement fixed his salary as resident manager and listed his powers and duties, one of his powers being to pay all operating expenses such as rent, light, heat, wages, etc. It was agreed that in case any or all of the stores should show an operating loss over a reasonable period of time "the parties will mutually agree" to close out such store or stores showing such losses. In addition to salary, it was provided that when each of the parties had derived profits of $4,500 from operation of the stores, Twin City Fixture Exchange, Inc., would sell to Gruendler all of its right, title, and interest in the merchandise and other assets for a consideration of one dollar. Gruendler continued in the employment of the Twin City Fixture Exchange, Inc., until March 20, 1941. On that date the latter company for an

agreed consideration of $6,000 sold all its stocks, good will, etc., located in the three retail stores. There was no compliance with the Bulk Sales Law in this transfer. There were no defaults in rent until April 1, 1941. Gruendler conducted a close-out sale of the stock at the Watertown store and vacated these premises by April 1, 1941, delivering the keys to plaintiff on March 31st. On or about March 2, 1940, in response to an inquiry by plaintiff following her receipt of a trustee's check, Gruendler had written plaintiff stating that there had been no "change in setup" and that "we" will continue to pay the rent and perform the conditions of the lease. The Twin City Fixture Exchange, Inc., had no knowledge of the existence of this correspondence or of the terms of the lease and did not authorize Gruendler to assume the lease. Plaintiff was not listed as a creditor in the bankruptcy proceedings and such knowledge as she had of them was wholly derived from the fact that she received one rental check signed by the trustee in bankruptcy of Gruendler Shoes, Inc. There was no written notice terminating the lease and plaintiff had no knowledge of the relations between Twin City Fixture Exchange, Inc., and Gruendler. At no time was there any change in the visible occupancy of the store or its trade name or advertising.

Plaintiff seeks to hold Twin City Fixture Exchange, Inc., for rent for the unexpired period of the term after abandonment of the premises by Gruendler. If anything is clear from the stipulation of the facts it is that there were never any contractual relations between defendant, Twin City Fixture Exchange, Inc., and plaintiff. There was nothing in the agreements between Gruendler and Twin City Fixture Exchange, Inc., out of which an assumption of the lease for the benefit of plaintiff could be constructed. Neither is there anything in the correspondence heretofore referred to which constitutes such an assumption. In the first place, there was nothing con-

tractual in Gruendler's letter to plaintiff. It was simply a response to an inquiry. Assuming that by reason of his employment by Twin City Fixture Exchange, Inc., the latter is, under the doctrine of *respondeat superior,* responsible in some way for the representation, plaintiff's position is not improved. Plaintiff did not act to her detriment. In fact, she had her rent paid by Twin City Fixture Exchange, Inc., for more than a year, at a time when the only person contractually liable for the rent was insolvent.

From plaintiff's viewpoint, the most favorable inference that can be drawn is that the bill of sale and agreement of employment taken together imply an assignment of the lease to Twin City Fixture Exchange, Inc. This inference is of dubious validity, but assuming that it can be drawn this would result only in a privity of estate between Twin City Fixture Exchange, Inc., and plaintiff arising out of occupation of the premises by the former. Privity of contract would be wholly lacking. The liability of Twin City Fixture Exchange, Inc., would be to pay rent as long as it held possession of the premises through the agency of Gruendler. The doctrine of *Lincoln Fireproof Warehouse Co. v. Greusel,* 199 Wis. 428, 439, 224 N. W. 98, 227 N. W. 6, and that of *Brown v. Loewenbach,* 217 Wis. 379, 258 N. W. 379, appears to us to require the conclusion that as said in the *Lincoln Case,* Twin City Fixture Exchange, Inc., was "obligated to pay as long as there was privity of estate between them and the landlord. When they vacated the premises they left the landlord with all the rights against his tenant which he would have possessed if they had never occupied the premises." Since the premises were surrendered, it must necessarily be true that the liability of the Twin City Fixture Exchange, Inc., terminated at that point. Their liability up to that point had been fully discharged by the payment of rent as it became due. Gruendler Shoes, Inc., continued liable upon the lease and judgment was properly

entered against it for damages and rent for the balance of the term.

It is further contended in this case that in any event Twin City Fixture Exchange, Inc., should be liable for one month's rent since there was no notice given of an intention to terminate the tenancy. This contention falls with the principal contention. There was no tenancy or privity of contract between Twin City Fixture Exchange, Inc., and plaintiff. The liability of the former was inseparable from its possession and occupancy of the premises and terminated upon a surrender. Gruendler was, of course, liable until the end of the term and notice to terminate would be wholly ineffectual so far as he was concerned.

There is the further contention in this case that the trial court abused its discretion in awarding Twin City Fixture Exchange, Inc., the sum of $128.51 costs. This is grounded upon the claim that Twin City Fixture Exchange, Inc., occupies an inequitable position because it did not disclose its interest in the assets or in the store. We consider that the stipulation is not broad enough to warrant sustaining this contention. Having been completely exonerated of liability, we see no reason why Twin City Fixture Exchange, Inc., should not have costs.

*By the Court.*—Judgment affirmed.